UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/19/18___

ANDREA HYLTON,

　　　　　　　　Plaintiff,

　　　- against -

J.P. MORGAN CHASE BANK, N.A. and
GOVERNMENT NATIONAL
MORTGAGE ASSOCIATION, as trustee
for Ginnie Mae Remic trust 2010-127,

　　　　　　　　Defendants.

**ORDER**

17 Civ. 9539 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

　　　　　　　In this action, pro se Plaintiff Andrea Hylton challenges a mortgage foreclosure in

favor of J.P. Morgan Chase Bank, N.A. ("Chase"). Prior to the instant case, Chase brought a

foreclosure action in New Jersey state court and obtained a final judgment against Plaintiff on

September 7, 2017, after Plaintiff's default. Plaintiff alleges that the underlying promissory note

and mortgage she signed may have been securitized and sold to Government National Mortgage

Association ("Ginnie Mae"), sued here as the Trustee for Ginnie Mae Remic Trust 2010-127.

The Complaint asserts claims for (1) wrongful foreclosure, premised on a lack of standing; (2)

fraud in the concealment; (3) fraud in the inducement; (4) unconscionable contract; (5) breach of

contract; (6) breach of fiduciary duty; (7) quiet title; (8) slander of title; and (9) declaratory

relief.

　　　　　　　Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) and (6) for lack

of subject matter jurisdiction and for failure to state a claim. As discussed below, the Court

concludes that the Rooker-Feldman doctrine bars Plaintiffs' claims for wrongful foreclosure,

unconscionability, quiet title, slander of title, and declaratory relief; Plaintiff lacks standing to bring her fraud claims; res judicata bars the remaining claims against Chase; and Plaintiff does not state a claim against Ginnie Mae. Accordingly, Defendants' motion to dismiss will be granted.

## **BACKGROUND**[1]

### I. **FACTS**

Plaintiff Andrea Hylton is a New Jersey resident. (Cmplt. (Dkt. No. 1) at 2, ¶ 4)[2] Defendant Government National Mortgage Association – "Ginnie Mae" – is sued as the Trustee for Ginnie Mae Remic Trust 2010-127, a "securitized trust organized and existing under the laws of New York." (Id. at 2, ¶ 5) Defendant Chase's corporate headquarters are in Manhattan. (Id. at 2, ¶ 6)

On September 3, 2010, Plaintiff executed a promissory note in favor of Aurora Financial Group, Inc., in the amount of $190,673.00. (Cmplt. (Forensic Report) (Dkt. No. 1) at 39; see Sampson Decl., Ex. D (Note) (Dkt. No. 15-4)) Plaintiff used the proceeds to purchase property located at 97 Dorchester Circle, Marlton, New Jersey (the "Property"). (Cmplt. (Dkt. No. 1) ¶ 41; id. Ex. 1 (Hylton Aff.) (Dkt. No. 1) at 25, ¶ 11) That same day, Plaintiff entered

---

[1] The following facts are drawn from the Complaint and its exhibits and attachments. (Dkt. No. 1) "In assessing the legal sufficiency of [a complaint], [a court] must accept factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (citing DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)). The court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint "relies heavily."'" Id. (quoting In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (quoting DiFolco, 622 F.3d at 111)).

[2] All references to page numbers in this Order are as reflected in this District's Electronic Case Filing system.

into a mortgage on the Property – once again in favor of Aurora Financial Group, Inc. – in the amount of $190,673.00 (the "Mortgage"). The Mortgage served as security for repayment of the Note. (Sampson Decl., Ex. A (Mortgage) (Dkt. No. 15-1) at 4-5))[3] The Mortgage lists the "Lender" as Aurora Financial Group, Inc., and states that Mortgage Electronic Registration Systems, Inc. – or "MERS" – is the mortgagee, and is acting "solely as a nominee for Lender and Lender's successors and assigns." (Id. at 2)

Attached to the Complaint is a November 29, 2017 affidavit from Plaintiff. In her affidavit, Plaintiff states that Chase purchased her loan from Aurora Financial Group in approximately October 2010. (Cmplt. Ex. 1 (Hylton Aff.) (Dkt. No. 1) at 25, ¶ 4) Plaintiff also states that in November 2014, she lost a significant portion of her income, and soon after contacted Chase to apply for a loan modification. (Id. ¶ 5) Plaintiff submitted four applications for a loan modification over the next three years, but Chase denied all her applications. (Id. ¶ 6) After the last denial, a law firm representing Chase notified Plaintiff that a foreclosure action would be filed 40 days after her "denial date." (Id. ¶ 9) Plaintiff alleges that on "November 14, 2017, a Sheriff's Sale notification was placed on [her] front door with a sale date of November 7, 2017." (Id. ¶ 10)[4] Plaintiff complains that Chase "had no intention of giving me a loan modification and while I was in the process of what I believed to be another loan modification, they filed for foreclosure on the property." (Id. ¶ 11)

---

[3] The Mortgage and Note are integral to the Complaint and thus properly considered under both Rule 12(b)(1) and (6). See DiFolco, 622 F.3d at 111.
[4] Although Plaintiff states in her affidavit that a sale date of "November 7, 2017" was specified in the sale notification, the Court understands Plaintiff to be referring to a December 7, 2017 sale date. The Complaint alleges that Defendants attempted "to wrongfully foreclose[] [on the Property] in December, 2017." (Cmplt. (Dkt. No. 1) ¶ 43)

3

Although Plaintiff asserts in her affidavit that Chase purchased the Note in

October 2010, the Complaint suggests that the Note may have been sold to the Ginnie Mae Trust

in October 2010 and securitized. (See Cmplt. (Dkt. No. 1) ¶¶ 9, 41; id. Ex. 1 (Hylton Aff.) at 25,

¶ 4; id. Ex. 3 (Forensic Report) at 32, 39, 42, 51, 53) Plaintiff further alleges that an assignment

of the Mortgage to Chase in February 2015 was defective or fraudulent. (Id. ¶¶ 9, 11, 24-25; id.

Ex. 3 (Forensic Report) at 38-39, 42, 58)

The Complaint contains other attachments, including an affidavit from Michael

Carrigan[5] – who represents that he is a "Certified Mortgage Securitization Auditor" (Id. Ex. 2

(Carrigan Aff.) at 27; id. Ex. 3 (Forensic Report) at 55) – and a "Property Securitization Analysis

Report" performed by "Certified Forensic Loan Auditors, LLC."[6] (Id. Ex. 3 (Forensic Report) at

31)

Carrigan's affidavit states that Plaintiff's loan

was not identified in any publicly reporting trust. "Guarantor – Ginnie Mae" is
stated on the Mortgage Electronic Registration Systems, Inc. web site as
"Investor", which indicates a past or current purported ownership interest of the
[Federal Housing Administration] loan. A qualifying trust formed shortly after
the execution of the loan on **September 3, 2010** is the **Ginnie Mae Remic Trust
2010-127** with a **closing date of October 29, 2010.** The **underwriters** are
**Nomura Securities International, Inc.** and **Loop Capital Markets LLC**, the
Sponsor is Ginnie Mae and **Trustee** is Wells Fargo Bank, NA. There is no
known connection between the original lender, Aurora Financial Group Inc and
JPMorgan Chase Bank, N.A., NA, to whom the Assignment of Mortgage was
assigned.

(Id. Ex. 2 (Carrigan Aff.) at 28, ¶ 7; id. Ex. 3 (Forensic Report) (Dkt. No. 1) at 56, ¶ 7) (emphasis

in original)

---

[5] The Complaint refers to Michael Carrigan as "Michael Carrington." (Cmplt. (Dkt. No. 1) ¶¶ 2, 6-11)

[6] It appears that Carrigan is associated with Certified Forensic Loan Auditors, LLC, and that he prepared the Forensic Report attached to the Complaint. (Cmplt. (Dkt. No. 1) ¶¶ 2, 6-7)

4

Carrigan's forensic report further states that "[t]he MORTGAGE and the Note have taken two distinctly different paths. The MORTGAGE was never transferred. The $190,673.00 note may have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering of $434,791,274." (Id. Ex. 3 (Forensic Report) (Dkt. No. 1) at 32; see id. at 39 ("The NOTE may have been sold, transferred, assigned and securitized into the GINNIE MAE REMIC TRUST 2010-127 with a Closing Date of October 29, 2010." (emphasis in original))) In his affidavit and report, Carrigan states that he "researched [the Property on] the Bloomberg online Database," and did not find a loan that matched the characteristics of Plaintiff's loan. Carrigan "did, however, locate a REMIC TRUST that matches the characteristics for securitizing this loan, namely the **GINNIE MAE REMIC TRUST 2010-127** issued October 29, 2010." (Id. at 42; see also id. Ex. 2 (Carrigan Aff.) at 28) (emphasis in original)

Carrigan's forensic report also states that Plaintiff's loan is a "Federal Housing Administration (FHA) loan. Most of the loans Ginnie Mae insures are FHA or Veterans Administration (VA) loans. . . . GINNIE MAE guarantees principal and interest of the securitized trusts that it formed. This is an indication that the loan is securitized with Ginnie Mae as the sponsor of the mortgage backed securities (MBS) mortgage pool." (Id.) The report goes on to state that "**[a]lthough Aurora Financial Group Inc[.] originated the loan, any subsequent purchaser may not have properly endorsed the subject note nor perfected the security interest in the note pursuant to the New Jersey Uniform Commercial Code. There is no known connection between the original lender and [Chase].**" (Id. (emphasis in original)) An attached printout of a "MERS Servicer ID" page for Plaintiff's loan shows that the "servicer" of the loan is Chase, and that the "Investor" is "Guarantor – Ginnie Mae." (Id. at 51)

Carrigan's Forensic Report also includes a copy of an "Assignment of Mortgage" dated February 3, 2015, stating that MERS has assigned the Mortgage to Chase. (Id. at 40) The Assignment is signed by Ashley J. Collins, Assistant Secretary of MERS. The Forensic Report asserts that

> Ashley Collins signs for Mortgage Electronic Registration Systems, Inc., as Assistant Secretary of MERS while admitting she is an Assignee employee. This is an indication that Ashley Collins attempted to assign the Mortgage to client JPMorgan Chase Bank, N.A. without an Assignor. Document is an Assignee-signed document and is invalid. This position of unilateral transfer is further strengthened by the fact that [t]here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Burlington County, New Jersey "For Good and Valuable Consideration[.]"

(Id.) The Complaint claims that the "Ashley Collins" endorsement on the Assignment of Mortgage is "a likely forgery." (Cmplt. (Dkt. No. 1) ¶ 9)

The Complaint also purports to quote from a declaration by Carrigan, which has not been provided to the Court. (Id. at 4, ¶ 6) The Complaint states that Carrigan performed a search for Plaintiff's loan on "'Freddie Mac's' loan look-up tool" – available on the Freddie Mac website – and that his search yielded results indicating that "Ginnie Mae owns [Plaintiff's] mortgage and . . . note." (Id. ¶¶ 12-13) The Complaint further represents that Carrigan had concluded,

> [w]ithin a reasonable degree of investigative certainty, . . . that contrary to the chain of assignments, and [Chase's] position that it owns the Hylton Mortgage, evidence shows the subject Mortgage and Note is owned by Ginnie Mae. The facts surrounding the sale of the subject Mortgage to Ginnie Mae have not been disclosed, and thus a fraud has very likely been perpetrated upon the Court. The concealment of the sale to Ginnie Mae, along with evidence that the "Ashley Collins" endorsement upon the note is a likely forgery, means the "original Note" is not in the possession of [Chase].

(Id. ¶ 9)

## II.    PROCEDURAL HISTORY

On November 23, 2015, Chase filed a mortgage foreclosure action against

Plaintiff and her husband in Superior Court of New Jersey, Chancery Division, Burlington

County (the "Foreclosure Action"). (Sampson Decl., Ex. C (Foreclosure Action Complaint)

(Dkt. No. 15-3)) In the complaint in that action, Chase states that Plaintiff has "failed to make

the payment that became due on January 1, 2015, and all payments becoming due thereafter, and

is therefore in default as of January 1, 2015." (Id. ¶ 7) On September 7, 2017, Chase obtained a

final judgment against Plaintiff in the amount of $209,130.46 plus interest and costs. The

judgment ordered that the Property be sold to raise funds to pay off the judgment. (Sampson

Decl., Ex. E (Final Judgment) (Dkt. No. 15-5))

Plaintiff alleges that on November 17, 2017, a Sheriff's Sale notification was

attached to the front door of the Property, notifying Plaintiff of a December 7, 2017 sale date for

the Property. (Cmplt. Ex. 1 (Hylton Aff.) (Dkt. No. 1) at 25, ¶ 10)[7]

On December 5, 2017, Plaintiff filed the Complaint in the instant action, which

names Chase and Ginnie Mae as defendants. (Dkt. No. 1) The Complaint alleges claims for (1)

wrongful foreclosure; (2) fraud in the concealment; (3) fraud in the inducement; (4)

unconscionable contract; (5) breach of contract; (6) breach of fiduciary duty; (7) quiet title; and

(8) slander of title. Plaintiff also seeks a declaratory judgment that Defendants have no interest

in the Property. (Id. ¶¶ 42-101)[8]

---

[7] As noted earlier, although Plaintiff refers to a sale date of November 7, 2017, this Court
understands Plaintiff to be referring to a sale date of December 7, 2017. (See Cmplt. (Dkt. No.
1) ¶ 43 (alleging that Defendants attempted to "wrongfully foreclose[] in December 2017."))

[8] The Complaint asserts that subject matter jurisdiction exists based on Plaintiff's claims under
(1) the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5565(a)(1);
and (2) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2614. (Id. ¶ 2) Neither statute is

7

On January 24, 2018, Defendants moved to dismiss. (Dkt. No. 13) In a February

9, 2018 letter, Plaintiff requested an extension of time to file an opposition (Dkt. No. 20), and on

February 15, 2018, this Court granted an extension to March 19, 2018. (Dkt. No. 21) No

opposition was filed. On August 9, 2018, this Court ordered that Plaintiff submit an opposition

by August 23, 2018, and warned Plaintiff that if no opposition was submitted, Defendants'

motion would be deemed unopposed. (Dkt. No. 24) No opposition was filed. Accordingly,

Defendants' motion is deemed unopposed.

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Rule 12(b)(1) Motion to Dismiss

"[A] federal court generally may not rule on the merits of a case without first

determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter

jurisdiction)." Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31

(2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction

under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or

constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir.

2000). When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of

'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" ApWU v.

Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554

(2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction

---

cited in the body of the Complaint, however, nor is there anything else in the Complaint
suggesting that Plaintiff intends to bring a cause of action under these statutes.

under Rule 12(b)(1) a district court may consider evidence outside the pleadings." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d. Cir. 2008) (citing Makarova, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [] may not rely on conclusory or hearsay statements contained in the affidavits." Id. In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, 3 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1992)).

An argument that the court does not have subject matter jurisdiction pursuant to the Rooker-Feldman doctrine is properly considered under Rule 12(b)(1). See Chery v. Nationstar Mortg. LLC, 18 Civ. 1240 (PAC), 2018 WL 3708664, at *4 (S.D.N.Y. Aug. 2, 2018) ("Because Rooker-Feldman applies, Plaintiff's claims must be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.").

**B.    Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

9

and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne. Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

Although Plaintiff has not submitted an opposition to Defendants' motion, Plaintiff's failure to file an opposition does not "'constitute "default" justifying dismissal of the complaint.'" McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000) (quoting Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983)). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not

warrant dismissal." Id. at 323. Accordingly, this Court will consider Defendants' motion on the merits.

### C. *Pro se* Complaints

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); see Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002) ("When considering motions to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly . . . .'" (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000))). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (internal citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, 9 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even for purposes of a pro se complaint. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678)).

## II. WHETHER PLAINTIFF'S CLAIMS ARE BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

### A. Legal Standard

"The Rooker-Feldman doctrine provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." Morrison, 591 F.3d at 112. Rooker-Feldman applies to federal actions "brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

> There are four requirements for application of the Rooker-Feldman doctrine:
>
> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

Hoblock v. Albany Cty. Bd. of Election, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks, footnote, and alterations omitted). The first and fourth requirements are "procedural," whereas the second and third are "substantive." Id. Where all four requirements are met, a district court must dismiss for lack of subject matter jurisdiction.

### B. Analysis

Here, the first and the fourth requirements for application of the Rooker-Feldman doctrine are clearly met. Plaintiff lost in the Foreclosure Action in New Jersey state court on September 7, 2017, when the Superior Court issued a judgment of foreclosure in favor of Chase. Moreover, Plaintiff's loss in state court took place before Plaintiff filed the instant complaint in federal court on December 5, 2017. See Pennicott v. JPMorgan Chase Bank, N.A., 16 Civ. 3044 (VB), 2018 WL 1891312, at *3 (S.D.N.Y. Apr. 18, 2018) ("[P]laintiff lost in the Foreclosure Action when the Supreme Court issued a judgment of foreclosure in favor of Fannie Mae on January 9, 2015, before this action was commenced on April 25, 2016. Therefore, the first and fourth elements are satisfied with respect to all of plaintiff's claims.")

"As to the second and third elements, Rooker-Feldman bars claims that ask a court to find a defendant lacked standing to pursue foreclosure in a prior state court action, because such claims require a court to sit in review of the state court judgment." Id. (citing

Francis v. Nichols, 16 Civ. 1848 (CS), 2017 WL 1064719, at *4 (S.D.N.Y. Mar. 21, 2017)).

Accordingly, Plaintiff's wrongful foreclosure claim – premised on Defendants' alleged lack of standing to bring such a claim – is barred by Rooker-Feldman. See Rockwood v. Cenlar FSB, 17 Civ. 10153 (VB), 2018 WL 2122820, at *3 (S.D.N.Y. May 8, 2018) ("Plaintiff's claims against Cenlar and Freedom for wrongful foreclosure would require the Court to find Cenlar wrongfully asserted its standing to initiate the Foreclosure Action. Thus, those claims are barred."). Plaintiff's claims for quiet title, slander of title, and declaratory relief are likewise barred by the Rooker-Feldman doctrine. See Pennicott, 2018 WL 1891312, at *3 ("Plaintiff's claims for declaratory relief, . . . slander of title, and quiet title would require the Court to find Chase and Fannie Mae wrongfully asserted their standing to pursue the Foreclosure Action and thereby to sit in review of the state court's judgment in the Foreclosure Action. Thus, those claims are barred.")

However, "[f]raud claims are not barred by Rooker-Feldman if (i) they seek damages for injuries suffered from the alleged fraud and (ii) their adjudication 'does not require the federal court to sit in review of the state court judgment.'" Francis, 2017 WL 1064719, at *5.

Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423 (2d Cir. 2014), is instructive as to Plaintiff's fraud claims here, because in that case the Second Circuit distinguishes between actions seeking a return of title – which would require review of a foreclosure action – and those seeking damages. In Vossbrinck, plaintiff lost title to his property in a state foreclosure action; sued in state and federal court seeking damages and return of the property; a defendant removed the state court action; and the cases were consolidated in federal court. Id. at 425. As in this case, plaintiff alleged that "[d]efendants engaged in fraud during the foreclosure action by (1) misrepresenting that they had standing to seek foreclosure, when in fact

[the defendant who initiated the foreclosure proceeding against plaintiff] was not the holder of [plaintiff's] note and mortgage when the foreclosure action was initiated, and [the other defendant] lacked standing to enter as substitute plaintiff [in the foreclosure proceeding]; and (2) submitting fraudulent title documents in the state action." Id. at 427. Plaintiff brought claims for, inter alia, fraud, negligent misrepresentation, and unjust enrichment. The Second Circuit held that, "[t]o the extent [plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, Rooker-Feldman bars [plaintiff's] claim." Id. But "[t]o the extent [plaintiff's] pro se complaint can be liberally construed as asserting fraud claims that are not barred by Rooker-Feldman – because they seek damages from [d]efendants for injuries Vossbrinck suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment – we nonetheless affirm the dismissal of those claims" based on waiver. Id. (emphasis added). In so ruling, the court stated that the result in Truong v. Bank of America, 717 F.3d 377 (5th Cir. 2013) – in which the Fifth Circuit held that plaintiff's claim under the Louisiana Unfair Trade Practices and Consumer Protection Law was not barred by Rooker-Feldman, Truong, 717 F.3d at 380-81, 383-85 – was "consistent with" the result in Vossbrinck. Vossbrinck, 773 F.3d at 428 n.2. As the Second Circuit explained, in that case "plaintiff was not seeking to overturn or void the state judgment and instead sought damages for injuries caused by the bank's actions." Id.

Plaintiff's fraud in the concealment claim is based on an allegation that Ginnie Mae did not disclose that Plaintiff's Note would be securitized. (See Cmplt. (Dkt. No. 1) ¶¶ 48-54) Plaintiff states that, "had the truth been disclosed, Plaintiff would not have pledged a security agreement to Ginnie Mae." (Id. ¶ 52) The Complaint further alleges that, "[a]s a direct result of the misrepresentations and concealment[,] Plaintiff was damaged in an amount to be

14

proven at trial." (Id. at ¶ 57) The Court concludes that Plaintiff seeks damages for the alleged

fraudulent concealment, and that her claim does not require this Court to review the Foreclosure

Action. Such claims are not barred by <u>Rooker-Feldman</u>. <u>See</u> <u>Pennicott</u>, 2018 WL 1891312, at

*4 ("[p]laintiff's claim for fraud in the concealment alleges she suffered damages because

defendants concealed the fact that the mortgage loan was securitized"; such claims are not barred

by <u>Rooker-Feldman</u>, because they "do not require a ruling that the foreclosure was improper").

   As to her fraud in the inducement claim, Plaintiff alleges that "Defendants[]

intentionally misrepresented to Plaintiff [that they] were entitled to exercise the power of sale

provision contained in the Mortgage . . . . In fact, Defendants were not entitled to do so and have

no legal, equitable, or actual beneficial interest whatsoever in the Property." (Cmplt. (Dkt. No.

1) ¶ 60) The Complaint further alleges that "[t]he material misrepresentations were made by

Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order

to induce the Plaintiff to submit to the foreclosure on the Real Property." (Id. ¶ 63) As with the

fraudulent concealment claim, because Plaintiff is seeking damages in connection with her

fraudulent inducement claim – and is not seeking the return of the Property (<u>see id.</u> ¶ 65) – her

fraudulent inducement claim is not barred by <u>Rooker-Feldman</u>. <u>See</u> <u>Mohamed v. World Sav.</u>

<u>Bank, FSB</u>, 15 Civ. 5934 (SJF), 2016 WL 8711440, at *4 (E.D.N.Y. Sept. 30, 2016) ("With

respect to Plaintiff's claims challenging the underlying loan transaction, her 'fraud in the

concealment' and 'fraud in the inducement' claims might be barred by <u>Rooker-Feldman</u>, but

only to the extent that they challenge the validity of the underlying mortgage and seek a ruling

that it was void."); <u>see also</u> <u>Beasley v. Indy Mac Bank</u>, 16 Civ. 4629 (JS) (AKT), 2018 WL

1611667 (E.D.N.Y. Feb. 26, 2018) ("[T]he conduct underlying Plaintiff's claims for fraud,

fraudulent inducement, and violations of TILA is causally linked to the foreclosure proceeding

and judgment. However, a liberal reading of Plaintiff's pro se Complaint indicates that it is this underlying alleged conduct – the alleged misrepresentations and failures to disclose related to the mortgage loan's origination, servicing, and securitization – for which Plaintiff seeks redress, rather than the state court judgment itself. The state court judgment and alleged conduct forming the basis for Plaintiff's claims are therefore independent and separate from one another, precluding application of Rooker-Feldman."), report and recommendation adopted, 2018 WL 1611382 (E.D.N.Y. Mar. 31, 2018).

As to Plaintiff's unconscionable contract claim, under New Jersey law[9] such a claim generally "'acts as a shield against enforcement of an unreasonable contract and not a sword on a claim for affirmative relief.'" Hunter v. Sterling Bank, Inc., 9 Civ. 172 (FLW), 2011 WL 5921388, at *8 (D.N.J. Nov. 28, 2011) (quoting Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 922 n.14 (Ch. Div. 2002)). As such, it "can[]not be brought as an affirmative claim or cause of action." Id. Plaintiff's unconscionable contract claim is thus a "shield" to bar enforcement of the Mortgage. (See Cmplt. (Dkt. No. 1) ¶ 68 ("The actions of Defendants as set forth herein, resulted in Plaintiff being forced, tricked, and misled into parting with their property."); id. ¶ 73 (Ginnie Mae should have known that Plaintiff was at a "special disadvantage" when it attempted to secure a right to foreclose on her home); id. ¶ 74 ("Defendant Ginnie Mae intended to exploit Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject property.")) As

---

[9] New Jersey law applies to this action. The Mortgage provides that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." (Mortgage (Dkt. No. 15-1) § 16) Under New York choice-of-law principles, an unconscionability claim is a contract-based claim and falls within a contract's choice-of-law clause. See Mayagüez S.A. v. Citigroup, Inc., 16 Civ. 6788 (PGG), 2018 WL 1587597, at *11 (S.D.N.Y. Mar. 28, 2018).

such, the injuries Plaintiff appears to complain of in connection with her unconscionable contract claim are the enforcement of the mortgage contract – the foreclosure itself – and a ruling for Plaintiff on this issue would require this Court to review the judgment rendered in the Foreclosure Action. As such, Rooker-Feldman bars this claim.[10]

As to the Complaint's breach of contract and breach of fiduciary duty claims, Plaintiff asserts that under Section 23 of the Mortgage – the release provision – Ginnie Mae was obligated to release its security interest in the Property when it received all sums due under the instrument, that it received all sums due under the instrument, but nonetheless did not release its security interest in the Property. (See Cmplt. (Dkt. No. 1) ¶¶ 77-79) Plaintiff further alleges that Ginnie Mae "failed to meet [its] fiduciary duty to satisfy, release and reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service release premium." (Id. ¶ 83)

Whatever the merits of these claims, they do not complain of injuries arising from the judgment in the Foreclosure Action. Instead, Plaintiff's alleged damages result from Defendants' failure to abide by the terms of the Mortgage and breach of the fiduciary duty they allegedly owed to Plaintiff. Although Plaintiff's breach of contract claim is "inextricably intertwined with those [issues] considered by the state court, that fact does not defeat subject

---

[10] Even assuming arguendo that Rooker-Feldman does not bar this claim, the Complaint's factual allegations are not sufficient to make out an unconscionable contract claim. Plaintiff has not pled facts demonstrating that any provision in the Mortgage contract is substantively unconscionable. "An unconscionable contract is one which 'is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" Mayagüez, 2018 WL 1587597, at *12 (quoting Gilman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10 (1988)). Plaintiff has not pointed to any term of the Mortgage that is unreasonable "in light of the [relevant] mores and business practices."

17

matter jurisdiction." Mercado v. Playa Realty Corp., 3 Civ. 3427 (JO), 2005 WL 1594306, at *5 (E.D.N.Y. July 7, 2005). Rather, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005) (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). As such, Rooker-Feldman does not bar this claim. See Pennicott, 2018 WL 1891312, at *4 (breach of the covenant of good faith and fair dealing claim alleging "damages caused by defendants' failure to perform loan servicing functions, supervise their employees, or provide adequate documentation, among other things" was not barred by Rooker-Feldman: "Plaintiff's claim 'do[es] not require that this Court review and reject the state foreclosure judgment, nor does the success of [plaintiff's] claims depend on this Court's conclusion that the state court improperly entered a judgment of foreclosure.'" (quoting Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 507 (S.D.N.Y. 2016))).

In sum, Plaintiff's claims for wrongful foreclosure, quiet title, slander of title, declaratory relief, and unconscionable contract are barred by Rooker-Feldman, but Plaintiff's claims for fraud, breach of contract, and breach of fiduciary duty are not barred by that doctrine.

## III. WHETHER PLAINTIFF HAS STANDING TO PURSUE HER CLAIMS

### A. Legal Standard

It is well established that "'[a] plaintiff must demonstrate standing for each claim and form of relief sought.'" Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Baur v. Veneman, 352 F.3d 625, 642 n.15 (2d Cir. 2003)). "Because standing is jurisdictional under Article III of the United States Constitution, it is a threshold issue in all cases[,] since putative plaintiffs lacking standing are not entitled to have their claims litigated in

18

federal court." Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 117 (2d Cir. 1991)
(internal citation omitted).

> [T]he "irreducible constitutional minimum" of standing consists of three
> elements. Lujan [v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)]. The plaintiff
> must have (1) suffered an injury in fact, (2) that is fairly traceable to the
> challenged conduct of the defendant, and (3) that is likely to be redressed by a
> favorable judicial decision. Id., at 560-561; Friends of the Earth, Inc. [v. Laidlaw
> Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)]. The plaintiff, as the
> party invoking federal jurisdiction, bears the burden of establishing these
> elements. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990).

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). The "elements are conjunctive, so that a
failure of any of the three elements deprives a plaintiff of standing to maintain an action in
federal court." Dickerson v. Feldman, 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006).

      "To establish injury in fact, a plaintiff must show that he or she suffered 'an
invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or
imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504
U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly
impending,' or there is a '"substantial risk" that the harm will occur.'" Susan B. Anthony List v.
Driehaus, 134 S. Ct. 2334, 2341 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398,
414 n.5 (2013)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal
and individual way.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560 n.1). "'As a
general rule,' this means 'plaintiff must have personally suffered.'" In re the Bear Stearns Cos.,
Inc. Sec., 8 MDL 1963 (RWS), 2016 WL 4098385, at *17 (S.D.N.Y. July 25, 2016) (quoting
W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008)).
"Concreteness" refers to an injury that is "real, and not abstract." Spokeo, 136 S. Ct. at 1548
(internal quotation marks omitted).

## B. Analysis

Defendants argue that under Rajamin v. Deutsche Bank Nat. Tr. Co., 757 F.3d 79
(2d Cir. 2014), Plaintiff lacks standing to bring this case. (Def. Br. (Dkt. No. 16) at 15-18)  In
Rajamin, plaintiffs claimed that they had been injured by defendants' demands for payment on
plaintiffs' mortgages and by their initiation of foreclosure proceedings, given that defendants
allegedly "ha[d] not obtained ownership over and d[id] not own plaintiffs' promissory notes and
deeds of trust and [therefore] had no right to collect and receive payment on the mortgage loans
and no right to foreclose on plaintiffs' real property." Rajamin, 757 F.3d at 83 (internal
quotation marks, alterations, and citations omitted). The Rajamin plaintiffs claimed that
defendants had received payments from them based on their claimed interest in plaintiffs' loans;
that defendants commenced or authorized the commencement of foreclosure proceedings; and
that plaintiffs had lost their homes in those foreclosure proceedings. See id. Plaintiffs did not
allege, however, that "any plaintiff or putative Class Member made loan payments in excess of
amounts due, made loan payments to any entity other than defendants, or was subjected to
duplicate billing or duplicate foreclosure actions." Id. Accordingly, the court rejected plaintiffs'
asserted injuries as too speculative and hypothetical to establish constitutional standing. Id. at
85-86.

In reaching this conclusion, the Second Circuit noted that

plaintiffs acknowledge that they took out the loans in 2005 or 2006 and were
obligated to repay them, with interest; and they have not pleaded or otherwise
suggested that they ever paid defendants more than the amounts due, or that they
ever received a bill or demand from any entity other than defendants. Thus, there
is no allegation that plaintiffs have paid more than they owed or have been asked
to do so.

Further, plaintiffs' challenge to defendants' claim of ownership of plaintiffs'
loans, implying that the loans are owned by some other entity or entities, is highly
implausible, for that would mean that since 2005 there was no billing or other
collection efforts by owners of loans whose principal alone totaled $3,776,000.

The suggestion that plaintiffs were in imminent danger – or, indeed, any danger – of having to make duplicate loan payments is thus entirely hypothetical.

Id. at 85. Similarly, "[j]ust as there was no allegation in the Complaint that any entity other than defendants had demanded payments, there was no allegation of any threat or institution of foreclosure proceedings against any plaintiff by any entity other than defendants." Id.

As to Plaintiff's fraud claims here, the Complaint first alleges that Ginnie Mae did not disclose that Plaintiff's Note would be securitized. (See Cmplt. (Dkt. No. 1) ¶¶ 48-54) Plaintiff states that "had the truth been disclosed, Plaintiff would not have pledged a security agreement to Ginnie Mae . . . for the purpose of an alternate means of collection." (Id. ¶ 52) As in Rajamin, however, Plaintiff's claimed injury is "conjectural or hypothetical," and Plaintiff has not articulated how the fact that her Note was securitized has injured her. Indeed, the Mortgage Plaintiff executed simultaneously with the Note explicitly warns Plaintiff that the Note and Mortgage might be sold:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

(Mortgage (Dkt. No. 15-1) § 20) Moreover, Plaintiff has not suggested that she was subjected to duplicate collection or duplicate foreclosure efforts. Indeed, it is clear from the complaint and final judgment in the Foreclosure Action that Chase alone pursued foreclosure. (Sampson Decl., Exs. B & E (Foreclosure Action Complaint & Final Judgment) (Dkt. Nos. 15-2 & 15-5))

The Complaint next alleges that

> 60. Defendants[] intentionally misrepresented to Plaintiff [that they] were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

21

> 61. Defendants misrepresented that they are the "holder and owner" of the Tangible Note and the beneficiary of the Mortgage/Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the Originator allegedly sold the mortgage loan instrument to GINNIE MAE REMIC TRUST. Defendants are attempting to collect on an intangible debt obligation via the § 1031 – Exchange to which they have no legal, equitable, or pecuniary interest relating to Plaintiff's Real Property. . . . Defendants are fraudulently foreclosing on the Real Property [in] which they have no monetary or pecuniary interest. . . .

(Cmplt. (Dkt. No. 1) ¶¶ 60-61)

Plaintiff acknowledges, however, that she signed the Note and Mortgage and owed money under the Note (Id. Ex. 1 (Hylton Aff.) at 25, ¶¶ 3, 5, 8), and that she fell behind on her payments (Cmplt. (Dkt. No. 1) ¶ 41), such that the initiation of foreclosure proceedings by the rightful owner of the Note and Mortgage would be proper. As in Rajamin, Plaintiff's suggestion that some other entity owns the Note and Mortgage does not demonstrate an injury-in-fact, because she has not demonstrated that any entity other than Chase attempted to foreclose on the Mortgage, that she has been the subject of duplicative collection efforts, or that she has paid more than she owed or was asked to do so. As such, Plaintiff has suffered no injury from the alleged misrepresentations. See Rajamin, 757 F.3d at 85-86; see also Obal v. Deutsche Bank Nat'l Trust Co., No. 14 Civ. 2463 (RWS), 2015 WL 631404, at \*3 (S.D.N.Y. Feb. 13, 2015) (finding no constitutional standing under Rajamin where plaintiff borrower challenged validity of assignment of mortgage loan, but "d[id] not allege that [he] ha[d] been confronted with conflicting payment obligations, nor that he ha[d] paid more than he owed or was asked to do so" (internal citations and quotation marks omitted)), aff'd, F. App'x 10 (2d Cir. 2016).

The same analysis does not hold for purposes of Plaintiff's breach of contract and breach of fiduciary duty claims, however. In these claims, Plaintiff contends that Defendants have breached provisions of the Mortgage. As to Ginnie Mae, it appears that Plaintiff's theory is that one Ginnie Mae entity held her loan for a period of time and then transferred it to an

affiliate. According to Plaintiff, when this transfer took place, the first Ginnie Mae entity was obligated to cancel the security interest entirely under the terms of the Mortgage. (See Cmplt. (Dkt. No. 1) ¶ 78 ("Defendant Ginnie Mae was paid in full . . . when it sold and relinquished its interest in the Plaintiff's real property to Ginnie Mae (depositor)."); id. ¶ 84 ("Defendant Ginnie Mae . . . for payment rendered through a service release premium divested itself . . . but[] did not comply with [Section 23 of the Mortgage].")) The identity of the two Ginnie Mae entities, when the transfer took place, and the details of this alleged transfer are not disclosed in the Complaint.

The Mortgage provides that

Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

(Mortgage (Dkt. No. 15-1) § 23) Plaintiff's theory that Defendants breached this provision presents a theory of liability that was not at issue in Rajamin.[11] For purposes of Plaintiff's breach of contract and breach of fiduciary duty claims, Plaintiff is not arguing that the incorrect party is attempting to foreclose on the Mortgage. Instead, Plaintiff is claiming that a contractual counterparty was required to release the Mortgage but failed to do so. Given that Plaintiff has alleged she was subject to foreclosure proceedings (Cmplt. Ex. 1 (Hylton Aff.) (Dkt. No. 1) at 25, ¶¶ 9-10), Plaintiff has pleaded an injury-in-fact for purposes of these claims. See Springer v. U.S. Bank Nat'l Ass'n, 15 Civ. 1107 (JGK), 2015 WL 9462083, at *8 (S.D.N.Y. Dec. 23, 2015) (where plaintiff claimed that he was harmed under a promissory note and deed of trust because U.S. Bank instituted a foreclosure action against him based on invalid assignments, district court

---

[11] Although the Rajamin plaintiffs brought a breach of contract claim under a "Pooling and Servicing Agreement" that provided for the formation of the relevant Trusts, plaintiffs were not parties to or third-party beneficiaries of that agreement. Rajamin, 757 F.3d at 86-87.

23

held that plaintiff had standing to pursue the claim: "The validity of the assignments does not hinge on whether U.S. Bank and the other defendants complied with the [Pooling and Servicing Agreements] or Prospectus, but only on whether the assignments were permitted by the terms of the promissory note, the deed of trust, and Nevada law. Because [Plaintiff] pleads that the defendants initiated an improper non-judicial foreclosure, [Plaintiff] has shown the requisite injury for Article III standing.").

Accordingly, Plaintiff's breach of contract and breach of fiduciary duty claims will not be dismissed on standing grounds.

## IV. RES JUDICATA

Defendants argue that Plaintiff's breach of contract and breach of fiduciary duty claims are barred by res judicata. (Def. Br. (Dkt. No. 16) at 21-22) Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). 28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Const. Corp., 456 U.S. 461, 466 (1982). Accordingly, New Jersey law governs the preclusive effect of the Foreclosure Action.

Under New Jersey law, in order for res judicata to apply, "'(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.'" McNeil v. Legislative Apportionment Comm'n of State, 828 A.2d 840, 859 (N.J. 2003) (quoting Watkins v. Resorts Int'l Hotel & Casino, Inc., 591 A.2d 592, 599 (N.J. 1991)).

24

As to the first requirement, "a default judgment qualifies as a final judgment for res judicata purposes." Sai Ram Imports Inc. v. Meenakshi Overseas LLC, 17 Civ. 11872 (JLL), 2018 WL 2045996, at *3 (D.N.J. May 1, 2018); see Tagayun v. Citibank, N.A., 5 Civ. 4302 (WJM), 2006 WL 5100512, at *4 (D.N.J. June 9, 2006) ("The rule in New Jersey is that a default judgment is a valid and final adjudication on the merits and therefore has res judicata effect barring future litigation.") Accordingly, the judgment in the Foreclosure Action qualifies as a valid, final, and on-the-merits judgment.

As to the second requirement, Chase was the plaintiff in the Foreclosure Action and Plaintiff was a defendant in that action. Ginnie Mae was not a party to the Foreclosure Action, however, and neither Plaintiff nor Defendants have asserted that Ginnie Mae and Chase are in privity. Indeed, it is uncertain based on the Complaint's allegations whether there was ever a contractual relationship between Ginnie Mae and Chase. To the extent an assignment of the Mortgage took place, Plaintiff claims that the assignment was invalid. (See Cmplt. Ex. 3 (Forensic Report) (Dkt. No. 1) at 40) The Court concludes that Plaintiff's breach of contract and breach of fiduciary duty claims against Ginnie Mae are not barred by res judicata.

Finally, Plaintiff's breach of contract and breach of fiduciary duty claims against Chase arise out of the same transaction or occurrence as the Foreclosure Action – both the Foreclosure Action and the instant action concern the Mortgage and a foreclosure based on the Mortgage. See Barrett v. Washington Mut. Bank, FA, 17 Civ. 7942 (KM), 2018 WL 3435071, at *9 (D.N.J. July 16, 2018) (where plaintiff brought breach of contract and breach of fiduciary claims "with the object of demonstrating that [defendant] did not have the kind of secured interest that would permit it to foreclose," court held that these claims arose out of the same

transaction and occurrence: "It grows out [of], and is based on, the mortgage and the mortgage foreclosure.")

Accordingly, Plaintiff's breach of contract and breach of fiduciary duty claims against Chase are barred by res judicata.

## V.    FAILURE TO STATE A CLAIM

Defendants contend that Plaintiff's causes of action for breach of contract and breach of fiduciary duty fail to state a claim. (Def. Br. (Dkt. No. 16) at 19-21, 25-26, 30)

Under New Jersey law, "[t]he elements of a breach of contract claim are '(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" Baymont Franchise Sys., Inc. v. R S Hosp., LLC, 15 Civ. 4067 (WHW), 2018 WL 3410031, at *2 (D.N.J. July 12, 2018) (quoting Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007)).

Here, Plaintiff asserts that Ginnie Mae breached Section 23 of the Mortgage, which states that "[u]pon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument." (Mortgage (Dkt. No. 15-1) § 23) The Complaint alleges that "Defendant Ginnie Mae was paid in full for their Accommodated capacity to the . . . Note and Mortgage . . . when it sold and relinquished its interest in the Plaintiff's real property to Ginnie Mae (Depositor)" (Cmplt. (Dkt. No. 1) ¶ 78), but it nonetheless failed to release the Mortgage. (Id. ¶ 79)

These allegations are not sufficient to state a plausible claim for relief. As discussed above, the Complaint does not explain what entity paid Ginnie Mae in full. While the Complaint appears to suggest that one Ginnie Mae entity transferred the Mortgage to another Ginnie Mae entity, no details regarding this alleged transfer are provided, including the entities involved, the terms of the alleged transfer, and when the alleged transaction occurred. Moreover,

26

given Plaintiff's admission that she fell behind in her payments on the Note (id. ¶ 41), Plaintiff has not adequately alleged that there was "payment of all sums secured by [the Mortgage]," which is a prerequisite for cancellation of the Mortgage under Section 23 of the Mortgage. (Mortgage (Dkt. No. 15-1) § 23) Moreover, although Plaintiff's breach of contract claim is also brought against Chase, there are no allegations in the Complaint that could support a breach of contract claim against Chase.

"Under . . . New Jersey law, the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship between the parties; (2) the breach of the duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach." SalandStacy Corp. v. Freeney, No. CIV.A. 11-3439 JLL, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012). "[T]he presumption that there is no fiduciary duty between a borrower and a lender has been universally embraced by New Jersey courts. . . . It would be, as other courts have noted, antithetical to the often adversarial and contentious nature of the borrower-lender relationship to impose a fiduciary duty on the lender." Galayda v. Wachovia Mortg., FSB, No. CIV.A. 10-1065 (FLW), 2010 WL 5392743, at *16 (D.N.J. Dec. 22, 2010) (citing Margulies v. Chase Manhattan Mortg. Corp., No. A-4087-03T3, 2005 WL 2923580, at *3 (N.J. Super. Ct. App. Div. Nov. 7, 2005) ("The general rule is that there are no presumed fiduciary relations between banks and their customers. The virtually unanimous rule in all jurisdictions is that debtor-creditor relationships 'rarely' give rise to a fiduciary duty. This is due, in large part, to the adversarial nature of the debtor-creditor relations." (internal citations omitted)); United Jersey Bank v. Kensey, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997) (stating that "[t]he virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty" and collecting cases); Globe Motor Car Co. v. First Fid. Bank, N.A., 641 A.2d 1136, 1138 (N.J.

Super. Ct. Law. Div. 1993) (same), aff'd, 677 A.2d 794 (N.J. Super. Ct. App. Div. 1996)).

Accordingly, Plaintiff's breach of fiduciary duty claim will be dismissed.

## VI.    LEAVE TO AMEND

With respect to leave to amend, the Second Circuit has cautioned that district courts "'should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'" Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)). "One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Id. (internal citations omitted).

Any amendment as to Plaintiff's claims against Chase would be futile, because Plaintiff's claims against Chase are barred by either the Rooker-Feldman doctrine or by res judicata.

As to Plaintiff's claims for wrongful foreclosure, quiet title, slander of title, unconscionable contract, and declaratory relief against Ginnie Mae, amendment would be futile, because these claims are barred by Rooker-Feldman. As to Plaintiff's remaining claims against Ginnie Mae, given Plaintiff's pro se status and the fact that no Amended Complaint has been filed, the Court will permit Plaintiff to move for leave to amend.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. The

Clerk of Court is directed to terminate the motion (Dkt. No. 13).

Any motion for leave to amend will be filed by October 3, 2018.

The Clerk of Court is directed to send a copy of this order by certified mail to pro

se Plaintiff Andrea Hylton, 97 Dorchester Circle, Marlton, NJ 08053.

Dated: New York, New York
September 18, 2018

SO ORDERED.

Paul G. Gardephe
United States District Judge